**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Wolodymyr M. Starosolsky,<br><br>Plaintiff,<br><br>v.<br><br>Veritec, Inc., Van Thuy Tran, Jack E. Dahl, Larry Matthews, Helen L. Laib, Steven Holtze, Larry Johannes and The Matthews Group, L.L.C.,<br><br>Defendants. | Civil File No. 00-2760 MJD/AJB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

---

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

A. Veritec ..... 3

B. Veritec's First Bankruptcy Proceeding and Plaintiff's Lawsuit ..... 4

C. The Mitsubishi Arbitration and Veritec's Second Bankruptcy Proceeding ..... 6

D. The 2007 Board of Directors Election ..... 8

ARGUMENT ..... 9

I. SUMMARY JUDGMENT STANDARD ..... 9

II. PLAINTIFF'S REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE EXCHANGE ACT IS MOOT ..... 10

III. PLAINTIFF'S CIVIL RICO CLAIM IS BARRED BY THE PSLRA ..... 13

IV. NO SPECIAL CIRCUMSTANCES EXIST TO JUSTIFY RETENTION OF JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS, AND THEREFORE THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION AND DISMISS THE PENDENT CLAIMS WITHOUT PREJUDICE. ..... 18

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page

## Cases

*Bald Eagle Area Sch. Dist. v. Keystone Fin.*, 189 F.3d 321 (3d Cir. 1999) ..................... 14

*Barstad v. Murray County*, 420 F.3d 880 (8th Cir. 2005) ..................... 19

*Brogren v. Pohlad*, 933 F. Supp. 793 (D. Minn. 1995) ..................... 20

*Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811 (2d Cir. 1975) ..................... 12

*Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524 (7th Cir. 1997) ..................... 11, 12, 13

*Burton v. Ken-Crest Servs., Inc.*, 127 F. Supp. 2d 673 (E.D. Pa. 2001) ..................... 17

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ..................... 19

*Ciro, Inc. v. Gold*, 816 F. Supp. 253 (D. Del. 1993) ..................... 20

*Edwards v. Widnall*, 17 F. Supp. 2d 1038 (D. Minn. 1998) ..................... 19

*Fink v. Weill*, No. 02 Civ. 10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ..................... 12

*Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345 (S.D. Fla. 2001) ..................... 15

*Gatz v. Ponsoldt*, 297 F. Supp. 2d 719 (D. Del. 2003) ..................... 17

*General Elec. Co. by Levit v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ..................... 12

*Gregoire v. Class*, 236 F.3d 413 (8th Cir. 2000) ..................... 19

*Herman v. Beretta*, No. 77 Civ. 4113, 1981 WL 1625 (S.D.N.Y. Apr. 13, 1981) ..................... 9

*Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 0698, 2004 WL 2278545 (N.D. Ill. Oct. 8, 2004) ..................... 16

*Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) ..................... 15

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481 (E.D. Pa. 2000) ..................... 15

*In re Teledyne Defense Contracting Derivative Litig.*, 849 F. Supp. 1369 (C.D. Cal. 1993) .......... 21

*J.W. DeWit Farms, Inc. v. Minnesota Cultivated Wild Rice Council*, 393 F. Supp. 2d 847 (D. Minn. 2005) .......... 18

*Little Gem Life Scis. LLC v. Orphan Med., Inc.* __ F. Supp. 2d __, 2007 WL 541677 (D. Minn. Feb. 16, 2007) .......... 13

*Maier-Schule GMC, Inc. v. General Motors Corp.*, 850 F. Supp. 1095 (W.D.N.Y. 1994) .......... 9

*McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208 (8th Cir. 1992) .......... 10

*Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364 (D.N.J. 1999) .......... 17

*MTD Serv. Corp. v. Weldotron Corp.*, No. 93 Civ. 4980, 1994 WL 455154 (S.D.N.Y. Aug. 19, 1994) .......... 9

*Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482 (8th Cir. 2004) .......... 10

*Sell v. Zions First Nation Bank*, No. CV 05 0684, 2006 WL 322469 (D. Ariz. Feb. 9, 2006) .......... 15

*Senty-Haugen v. Goodno*, 462 F.3d 876 (8th Cir. 2006) .......... 9

*Sias v. Herzog*, __ F. Supp. 2d __, 2006 WL 2418950 (D. Minn. Aug. 21, 2006) .......... 21

*Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) .......... 18

*Solfanelli v. Mainwaring,* Nos. CIV A 92-5113, CIV A 93-2129, 1993 WL 283879 (E.D. Pa. July 28, 1993) .......... 20

*Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770 (8th Cir. 1995) .......... 18

*Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032 (D. Minn. 2003) .......... 13, 14

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) .......... 19, 20

**Statutes**

15 U.S.C. § 78n(a) .......... passim

18 U.S.C. § 1964(c) .......... 13, 14

28 U.S.C. § 1334 .......... 18

28 U.S.C. § 1367 .......... 19, 20

28 U.S.C. § 2201 .......... 18

28 U.S.C. § 2202 .......... 18

**Rules**

Fed. R. Civ. P. 56.......... 9

17 C.F.R. § 240.14a-9.......... passim

Defendants Veritec, Inc. ("Veritec"), Van Thuy Tran, Jack E. Dahl, Larry Matthews, Helen L. Laib, Steven Holtze, Larry Johannes and The Matthews Group, L.L.C. (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Wolodymyr Starosolsky ("Plaintiff"), a Veritec shareholder and former director, commenced this suit nearly seven years ago alleging that, while Veritec was in the midst of a bankruptcy proceeding in California, Defendants engaged in a fraudulent conspiracy to wrest control of the company and defraud its shareholders. In carrying out this conspiracy, Defendants allegedly duped the other members of the Veritec Board of Directors, and also conscripted the services of the California bankruptcy court by fraudulently inducing that court to enter an order closing the bankruptcy case based upon a plan of reorganization that effectively gave Defendants control of Veritec.

Although Defendants vigorously dispute the validity of these charges, this Court need not delve into the minutia of each of Plaintiff's sweeping accusations in order to grant the Defendants' motion and dismiss the complaint. Plaintiff asserts two federal causes of action and a number of state-law claims; Plaintiff contends that the Court has federal-question subject-matter jurisdiction over the federal claims and supplemental jurisdiction over the state claims. As explained below, both of the federal claims are fatally flawed and therefore must be dismissed with prejudice. Following dismissal of those federal claims, the Court should decline to exercise jurisdiction over the remaining state claims and dismiss those claims without prejudice.

Plaintiff's first federal claim alleges that Defendants caused Veritec to issue false and misleading proxy statements to shareholders in November of 1999 in connection with the Veritec shareholders meeting and board of director elections held in December of 1999. Plaintiff asserts that Defendants thereby violated § 14(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), as well as Rule 14a-9 promulgated thereunder by the Securities and Exchange Commission ("SEC"). Plaintiff seeks only declaratory and injunctive relief pursuant to this claim—essentially, Plaintiff asks the Court to declare that the 1999 proxy materials were false and misleading, void the December 1999 shareholder meeting and director elections, and compel Veritec to hold a new election pursuant to untainted proxy statements. This claim is moot because, in addition to the fact that more than seven years have passed, during which time Veritec entered into and emerged from a second bankruptcy proceeding, Veritec has conducted another board of directors election pursuant to new proxy materials. Federal courts have held that new proxies and subsequent elections moot § 14(a) claims like those asserted by Plaintiff.

Plaintiff's second federal cause of action is a civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. This claim must be dismissed because it is precluded by the Private Securities Litigation Reform Act ("PSLRA"), which amended the civil action provision of the RICO statute to bar plaintiffs from asserting a civil RICO claim where, as here, the alleged predicate acts are actionable as securities fraud. The RICO predicate acts that Plaintiff alleges in this case are part of an alleged fraudulent scheme regarding the issuance of Veritec securities that Plaintiff says Defendants perpetrated with the intent of harming Veritec's shareholders and that,

according to Plaintiff, had the effect of damaging Veritec's shareholders by reducing and/or diluting the value of their Veritec securities. This type of fraudulent scheme is actionable as securities fraud and thus cannot serve as the basis for a civil RICO claim. Federal courts across the country have dismissed, pursuant to the PSLRA amendment, civil RICO claims based upon similar allegations.

Finally, after dismissal of Plaintiff's federal claims, the Court should, pursuant to its discretion under the supplemental jurisdiction statute, decline to exercise jurisdiction over the remaining state-law claims. Generally, a district court should decline to exercise jurisdiction over pendent state-law claims following dismissal of the federal claims that convey subject-matter jurisdiction, and this case presents no special circumstances justifying departure from this general rule.

## FACTUAL BACKGROUND

### A. Veritec

Veritec was incorporated in Nevada in September of 1982, and is primarily engaged in the development, marketing and sales of a line of microprocessor-based encoding and decoding systems that utilize a patented two-dimensional barcode technology originally invented by the founders of Veritec. *See* Affidavit of Van Thuy Tran in Support of Defendants' Motion for Summary Judgment ("Tran Aff.") ¶ 3; Ex. A at 4, 6.[1] Veritec's common stock is traded in the over-the-counter market, and the company is subject to the continuing reporting obligations of the Exchange Act, which, among other things, requires the company to file with the SEC periodic quarterly and

[1] All references to exhibits ("Ex.") herein are to the Exhibits to the Tran Affidavit.

annual reports, current reports as to specified matters, and proxy materials. Tran. Aff. ¶ 4; Ex. A at 15.

**B. Veritec's First Bankruptcy Proceeding and Plaintiff's Lawsuit**

In October of 1995, Veritec's creditors filed an involuntary petition for relief in bankruptcy against Veritec in the United States Bankruptcy Court for Central District of California ("California Bankruptcy Court"), Petition No. 1:95-17978. *See* Amended and Restated Complaint ("Am. Compl.") ¶ 13. After a series of proceedings, the California Bankruptcy Court confirmed Veritec's Chapter 11 Plan of Reorganization ("First Ch. 11 Plan") in May of 1997. *Id.* That Plan required an investor to infuse $2 million in new assets into Veritec in exchange for new Veritec convertible preferred stock. *See id.* However, from the time of approval of the First Ch. 11 Plan until December of 1998, no investors were able to perform the acts necessary to satisfy that Plan. *Id.*

In December of 1998, Defendant The Matthews Group, L.L.C. ("TMG") contacted Veritec and indicated an interest in providing the funding to Veritec required by the First Ch. 11 Plan. Am. Compl. ¶ 14. Veritec and TMG signed a preliminary agreement and Veritec's Board of Directors approved certain items related to TMG's investment in Veritec, subject to a due diligence period. *Id.* Under the terms of TMG's proposed investment in Veritec, TMG would deliver to Veritec a $2 million promissory note payable at a rate of $18,518.52 per month for 108 months, bearing no interest, in exchange for 275,000 shares of Veritec Series H Convertible Preferred stock, convertible to 2.75 million shares of Veritec common stock. *See id.* ¶ 18. The Veritec Board of Directors held a meeting on April 26, 1999, regarding TMG's proposed investment; the

minutes of that meeting indicate that a majority of the Board approved the TMG proposal, though Plaintiff alleges that this action was not properly adopted by a majority of the Board. *Id.* ¶ 19.

The promissory note issued to Veritec by TMG, and the terms associated with it, provided the financing that Veritec needed to comply with the First Ch. 11 Plan; thus, in September of 1999, Veritec filed a motion with the California Bankruptcy Court asking for a final decree to close those proceedings. *See id.* ¶ 23. In support of that motion, Veritec also filed a copy of the TMG promissory note with the California Bankruptcy Court. *See id.* On October 13, 1999, the California Bankruptcy Court granted Veritec's motion and entered a final decree closing Veritec's California Bankruptcy Proceeding. *Id.* ¶ 28. Though Plaintiff alleges in this lawsuit that the Defendants perpetrated a fraud on the California Bankruptcy Court, Plaintiff did not raise these allegations in any filing with that court, or appeal or otherwise seek to challenge the entry of the California Bankruptcy Court's order closing the bankruptcy proceeding.

On or about November 8, 1999, Veritec filed a Schedule 14A with the SEC relating to the annual Veritec shareholders meeting scheduled for December of 1999. *See* Am. Compl. ¶ 33. *See also* Ex. B (Veritec Schedule 14A filed with the SEC on or about Nov. 8, 1999). Veritec distributed the proxy solicitation included in this Schedule 14A to Veritec's shareholders on or about November 24, 1999. Tran Aff. ¶ 19.

On December 20, 1999, Veritec held an annual shareholders meeting that included, *inter alia*, an election for three positions on Veritec's Board of Directors. Am. Compl. ¶ 42. At the director election held at this shareholders meeting, Defendants Tran

and Matthews, and a third individual, Dean W. Westberg, were elected directors of Veritec for the next term of the Board. *Id.*[2] Though Plaintiff alleges that Veritec held this shareholders' meeting "over Plaintiff's protestations" (*see* Am. Compl. ¶ 42), Plaintiff made no effort to enjoin Veritec from holding this meeting.

Plaintiff commenced this lawsuit by filing a complaint in the United States District Court for the Central District of California on or about June 30, 2000, more than six months after the December 1999 Veritec shareholders meeting, and more than seven months after Veritec filed the proxy materials related to this shareholders meeting. The case was transferred to this Court in late December of 2000. Plaintiff asserts two federal causes of action: a derivative claim under § 14(a) of the Exchange Act and SEC Rule 14a-9 (First Claim for Relief, Am. Compl. ¶¶ 43-49) and a civil RICO claim (Eighth Claim for Relief, Am. Compl. ¶¶ 93-99), as well as a claim under the Declaratory Judgment Act (Fourth Claim for Relief, Am. Compl. ¶¶ 66-69). Plaintiff also asserts various state-law causes of action (Second, Third, Fifth, Sixth, Seventh and Ninth Claims for Relief, Am. Compl. ¶¶ 50-65, 70-92, 100-113) over which Plaintiff asserts the Court has pendent jurisdiction (Am. Compl. ¶ 2).

### C. The Mitsubishi Arbitration and Veritec's Second Bankruptcy Proceeding

In January 2002, Veritec initiated arbitration in the International Court of Arbitration of the International Chamber of Commerce in Los Angeles, California, against Mitsubishi Corporation ("Mitsubishi"), alleging five causes of action arising out

[2] Defendants Laib and Holtze left the Veritec Board of Directors at around this same time. *See* Tran Aff. ¶ 16.

of various contracts and business dealings. Tran Aff. ¶ 5; Ex. A at 5. Mitsubishi counterclaimed and arbitration commenced. *Id.* This arbitration continued into 2004 with Veritec proceeding on two claims against Mitsubishi (tortuous interference with prospective business opportunities and termination of a licensing agreement), and Mitsubishi proceeding on various claims against Veritec for trade secret misappropriation and copyright infringement based upon the Error Detection and Correction Technology functionality utilized by Veritec, together with assorted breach of contract claims. Tran Aff. ¶ 6; Ex. A at 5. In February 2005, the arbitration court made an adverse ruling against Veritec and in favor of Mitsubishi resulting in a monetary award of $8,174,518 to Mitsubishi and enjoining Veritec (and by extension Veritec's customers) from the future use or sale of the Error Detection and Correction Technology. Tran Aff. ¶ 7; Ex. A at 6.

On February 28, 2005, following the adverse ruling in the Mitsubishi arbitration, Veritec filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota ("Minnesota Bankruptcy Court"), Bankruptcy Petition No. 05-41161. Tran Aff. ¶ 8; Ex. A at 6. In December 2005, the Minnesota Bankruptcy Court converted the Chapter 11 proceeding to one under Chapter 7 of the Bankruptcy Code. Tran Aff. ¶ 9; Ex. A at 6.

In February of 2006, Veritec and Mitsubishi entered into a settlement agreement whereby, in exchange for certain consideration, Mitsubishi waived its right to the $8,174,518 arbitration award and granted Veritec a license to use Mitsubishi's Error Detection and Correction Technology. Tran Aff. ¶ 10; Ex. A at 13. After Veritec and Mitsubishi entered this settlement agreement, the Minnesota Bankruptcy Court ruled in

favor of reconverting Veritec's Minnesota bankruptcy case back to one under Chapter 11, and Veritec once again became a "debtor-in-possession" under the jurisdiction of the Minnesota Bankruptcy Court. Tran Aff. ¶ 11; Ex. A at 6, 13.

On April 26, 2006, the Minnesota Bankruptcy Court confirmed Veritec's Third Amended Plan of Reorganization. Tran Aff. ¶ 12; Ex. A at 6, 13. *See also* Ex. C (Order and Notice Confirming Plan and Fixing Time Limits). On August 8, 2006, after resolution of disputed creditor claims, the Minnesota Bankruptcy Court entered a Final Decree closing the Chapter 11 case in its entirety. Tran Aff. ¶ 13; Ex. A at 6, 13. *See also* Ex. D (Order and Final Decree Closing Chapter 11 Case).

**D. The 2007 Board of Directors Election**

In February 2007, Veritec filed a Schedule 14A with the SEC containing proxy materials related to the Annual Meeting of Shareholders scheduled for March of 2007. Tran Aff. ¶ 14. *See also* Ex. E (Veritec Schedule 14A filed with the SEC on or about February 7, 2007). The proxy statement included with this filing contained two proposals for the upcoming shareholders meeting: the election of all three members of the board of directors, and the appointment of an independent audit firm. Tran Aff. ¶ 14; Ex. E at 3-4. Veritec distributed the proxy materials for the 2007 Annual Meeting of Shareholders and director elections to Veritec's shareholders, including Plaintiff. Tran Aff. ¶ 14.

On March 2, 2007, Veritec held an annual shareholders meeting in Minneapolis. *See* Tran Aff. ¶ 15. At this meeting, Tran, Matthews and Westberg were reelected as directors by a vote of Veritec's shareholders. *Id.* Plaintiff did not seek to enjoin this meeting or the director election.

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

A party against whom a claim is asserted may move for summary judgment. Fed. R. Civ. P. 56(b). Summary judgment must be granted in the movant's favor where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment is a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment for the defendant is appropriate where the plaintiff's claims for injunctive or declaratory relief have become moot. *See, e.g.*, *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006) (affirming the district court's grant of summary judgment as to all claims, including claims for injunctive and declaratory relief that had become moot), *cert. denied*, __ S. Ct. __, 2007 WL 484391 (Apr. 16, 2007). *Accord MTD Serv. Corp. v. Weldotron Corp.*, No. 93 Civ. 4980, 1994 WL 455154, at *1, *9 (S.D.N.Y. Aug. 19, 1994) (summary judgment is warranted where Exchange Act claims had become "stale and devoid of equity" and therefore moot as a result of subsequent events); *Maier-Schule GMC, Inc. v. General Motors Corp.*, 850 F. Supp. 1095, 1102-04 (W.D.N.Y. 1994) (granting summary judgment, on the basis of affidavits and legal memoranda, for defendants on plaintiff's demand for injunctive and declaratory relief because those claims had become moot), *aff'd*, 62 F.3d 1412 (2d Cir. 1995). *See also Herman v. Beretta*, No. 77 Civ. 4113, 1981 WL 1625, at *2 (S.D.N.Y. Apr. 13, 1981) (granting summary judgment and dismissing § 14(a) claims on the basis of supporting affidavits even though the parties had not taken discovery).

Furthermore, the defendant is entitled to summary judgment where the plaintiff's civil RICO claim is barred by the PSLRA. *See Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482, 490 (8th Cir. 2004) (affirming summary judgment for defendants on plaintiffs' civil RICO claim on the grounds that the claim was precluded by the PSLRA amendment).

## II. PLAINTIFF'S REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE EXCHANGE ACT IS MOOT.

In his first claim for relief, pursuant to § 14(a) of the Exchange Act and SEC Rule 14a-9, Plaintiff alleges that Veritec's proxy materials, distributed in November of 1999 for the December 1999 shareholders meeting, were false and misleading. Plaintiff seeks only injunctive and declaratory relief pursuant to this proxy violation claim. Specifically, Plaintiff requests a court order setting aside the results of the December 20, 1999 Veritec shareholders meeting and ordering that Veritec conduct a new shareholders meeting, following the filing an dissemination of new proxy materials. *See* Am. Compl. at p. 35. As explained below, these claims are now moot and must be dismissed.

The case or controversy requirement of Article III of the U.S. Constitution requires that, "[i]n order for a federal court to hear a case, there must be a definite and concrete controversy involving adverse legal interests at every stage in the litigation … for which the court can grant specific and conclusive relief." *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992) (internal citations omitted). Furthermore, "[t]hrough the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief." *Id.*

(citations omitted). The facts set forth above show that the injunctive and declaratory relief that Plaintiff seeks pursuant to his claims under the Exchange Act have become moot. Nearly ***seven and one-half years*** have passed since Veritec issued the proxy statement that Plaintiff alleges is defective and since Veritec held the shareholder meeting and board of director elections that Plaintiff seeks to undo. During that time, Veritec has, among other things, entered into and emerged from a second bankruptcy proceeding and held a subsequent shareholder meeting and board of directors election pursuant to new proxy materials. Indeed, Defendants Laib and Holtze, whom Plaintiff sued as directors (*see* Am. Compl. ¶¶ 9, 10) no longer serve on the Vertiec Board. Tran, Matthews and Westberg, whose 1999 election to the Veritec board Plaintiff asks this Court to undo, have now been reelected to the Veritec Board as part of a wholly-separate election and pursuant to different proxy materials than those which Plaintiff challenges in this lawsuit. Under such circumstances, courts have routinely dismissed proxy claims for declaratory and injunctive relief like those Plaintiff asserts here.

For example, in *Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524 (7th Cir. 1997), the plaintiff (Buckley) commenced a class action suit against the defendant company (ADM) and members of its board alleging that they violated §§ 14(a) and 20(a) of the Exchange Act by omitting facts from proxy statements that, according to plaintiff, would have altered the board of directors election if disclosed. 111 F.3d at 525. Buckley sought injunctive and declaratory relief similar to that Plaintiff which seeks pursuant to his Exchange Act claims in this case: a declaration that the proxy statement contained material omissions and an order that the company hold a special election so that

shareholders could elect a new board pursuant to proxy statements issued and approved by the court. *See id.* at 526. After the district court granted the defendants' motion to dismiss, Buckley appealed, and while that appeal was pending, ADM held its next annual shareholders meeting and elected another board of directors pursuant to a new proxy statement. *Id.* The Seventh Circuit ruled that that the issuance of the new proxy statement and the occurrence of the new election rendered the plaintiff's § 14(a) claims for injunctive and declaratory relief moot:

> The directors elected at the 1995 annual meeting were elected to serve one-year terms. Those one-year terms have expired. ***Once ADM issued its 1996 proxy statement and held a new election at its October 1996 annual meeting, the dispute over the 1995 election became irrelevant.*** Even if the 1995 election were invalid because the proxy statements contained material omissions, this court has no remedy to grant Buckley because the directors elected in 1995 either no longer serve as directors, or were reelected in 1996 based on new proxy statements.

*Id.* (emphasis added). *See also General Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992) (plaintiff's claim for equitable relief pursuant to § 14(a) is moot because the terms of the directors elected pursuant to the allegedly defective proxies had expired, and the company had since held a new election for directors); *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir. 1975) (affirming dismissal of § 14(a)/Rule 14a-9 claims for injunctive and declaratory relief that were mooted by a subsequent stockholder meeting); *Fink v. Weill*, No. 02 Civ. 10250, 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005) (concluding that, to the extent plaintiff sought equitable relief pursuant to her § 14(a) claim, that claim was moot because a new board of directors had been elected).

The facts of this case warrant the same result as in *Buckley* and the other cases cited above. Indeed, the circumstances here present an ever more compelling case for finding that Plaintiff's § 14(a) claims are now moot. In each of the above cases, the courts held that the plaintiffs' claims for equitable relief pursuant to § 14(a) were mooted by the next board of directors election. In this case, not only has Veritec held a new board of directors election based upon new proxy materials, there have been other significant events in the life of the company in the more than seven years that have passed since the occurrence of the events in late 1999 that Plaintiff asks this Court to reverse. Most notably, Veritec entered into another Chapter 11 bankruptcy proceeding and emerged from that bankruptcy under a new and different plan of reorganization. Therefore, because Plaintiff seeks only equitable relief pursuant to his claims under § 14(a) of the Exchange Act and SEC Rule 14a-9, and because those claims are now moot, the Court should dismiss Plaintiff's federal securities claims with prejudice.[3]

## III. PLAINTIFF'S CIVIL RICO CLAIM IS BARRED BY THE PSLRA.

As part of the PSLRA enacted in 1995, Congress amended the provision of the RICO Act authorizing civil suits to "narrow[] the kind of conduct that could qualify as a predicate act under the statute." *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1071 (D. Minn. 2003) (Kyle, J.). Specifically, § 107 of the PSLRA amended § 1964(c) of the RICO Act, which now provides:

---

[3] Plaintiff also asserts claims under § 20(a) of the Exchange Act. *See, e.g.*, Am. Compl. ¶ 44. Because liability under § 20(a) is premised upon liability under § 14(a), dismissal of Plaintiff's § 14(a) claims compels dismissal of the § 20(a) claims as well. *Little Gem Life Scis. LLC v. Orphan Med., Inc.* __ F. Supp. 2d __, 2007 WL 541677, at *8 (D. Minn. Feb. 16, 2007) (Montgomery, J.).

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ***except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962***. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).[4]

The Conference Committee report accompanying § 107 of the PSLRA stated that the amendment to the RICO statute was intended not only "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *Stephenson*, 282 F. Supp. 2d at 1071 (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995), U.S. Code Cong. & Admin. News 1995, pp. 730, 746, as quoted in *Bald Eagle Area Sch. Dist. v. Keystone Fin.*, 189 F.3d 321, 327 (3d Cir. 1999)) (internal quotations omitted). Thus, a RICO plaintiff cannot circumvent the PSLRA amendment simply by avoiding the phrase "securities fraud" in pleading RICO predicate offenses. Federal courts have frequently confronted—and dismissed—RICO claims pursuant to the PSLRA amendment even where the plaintiff disavows any claim for securities fraud and instead purports to allege other predicate acts, such as wire or mail fraud. *See, e.g.*, *Sell*

---

[4] There is no allegation that any of the Defendants have or will be charged, much less convicted, of a criminal violation of the RICO statute. Thus, the "exception to the exception" provided for in the last sentence of amended § 1964(c) has no application to this case.

*v. Zions First Nation Bank*, No. CV 05 0684, 2006 WL 322469, at **8-11 (D. Ariz. Feb. 9, 2006); *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1356-58 (S.D. Fla. 2001); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 485-87 (E.D. Pa. 2000).

Furthermore, it is well-settled that the alleged predicate acts need not be "actionable as securities fraud" by the plaintiff asserting the RICO claim; it is sufficient that a different plaintiff could assert a securities fraud claim based upon the alleged predicate acts. Federal courts have dismissed civil RICO claims brought by plaintiffs who themselves did not have standing to assert a securities fraud claim. *See, e.g.*, *Howard v. America Online, Inc.*, 208 F.3d 741, 749-50 (9th Cir. 2000) (securities fraud allegations could not be used to establish RICO violation even though plaintiffs did not have standing to bring securities claim); *Florida Evergreen Foliage*, 165 F. Supp. 2d at 1357-58 (PSLRA amendment precluded RICO claims notwithstanding the fact that plaintiffs were not shareholders and therefore could not bring a securities fraud action).

In this case, Defendants are entitled to summary judgment on Plaintiff's civil RICO claim because the alleged predicate acts—essentially, wire and mail fraud committed in furtherance of a fraudulent conspiracy regarding the issuance of Veritec stock that resulted in the diminution of the value of that stock to the detriment of Veritec's shareholders—are actionable as securities fraud, therefore bringing Plaintiff's claim within the PSLRA prohibition. Plaintiff describes the predicate acts supporting his civil RICO claim as a fraudulent conspiracy to defraud Veritec's shareholders. *See* Am. Compl. ¶ 2 ("This court also has jurisdiction over the parties and the subject matter

pursuant to and by reason of Defendants' ***conspiracy to commit fraud***, actionable under the civil provisions of RICO, Title 18 U.S.C. §§1962, *et seq.*"); ¶ 94 ("Defendants … established, formed and set up a scheme in order to ***defraud the shareholders*** and creditors of Veritec") (emphasis added). Plaintiff further alleges that this fraudulent conspiracy relates to the issuance of Veritec stock and the dissemination of proxy materials to Veritec's shareholders. *See, e.g.*, Am. Compl. ¶ 97. Specific allegations of predicate offenses include, for example, issuing false and misleading proxy statements to shareholders (¶ 97.c); improperly issuing shares of Veritec stock to Defendants (¶ 97.e) with the intent of unfairly diluting the value of Veritec stock held by other shareholders (¶ 97.f); and making false and misleading statements concerning the capitalization and capital structure of Veritec (¶ 97.g). Finally, the Complaint makes unmistakably clear that Plaintiff is alleging that this fraudulent scheme harmed Veritec shareholders by diluting or reducing the value of their Veritec securities. *See, e.g.*, Am. Compl. ¶ 97.f (Defendants issued Veritec stock to TMG and/or Tran, Matthews and Johannes with the intent of "***unfairly diluting the shares held by others*** including Plaintiff"); ¶ 99 ("The damages incurred by Plaintiff include, without limitation, the ***radical decline in the value of his shares of stock of Veritec***.") (emphasis added).

Federal courts across the country have dismissed similar RICO claims against corporate insiders pursuant to the PSLRA bar because the alleged predicate acts are actionable as securities fraud. *See, e.g.*, *Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 0698, 2004 WL 2278545, at **5-10 (N.D. Ill. Oct. 8, 2004) (PSLRA barred RICO claim based upon alleged scheme by directors, officers and controlling shareholders to loot the

company that included, *inter alia*, failure to make disclosures in SEC filings and obtaining board approval for corporate actions through misstatements and omissions); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 729-32 (D. Del. 2003) (granting summary judgment for defendants, pursuant to the PSLRA amendment, on plaintiffs' RICO claims in shareholder derivative action alleging that corporate insiders committed wire and mail fraud and engaged in a scheme involving a series of fraudulent transactions to loot and improperly transfer control of the company); *Burton v. Ken-Crest Servs., Inc.*, 127 F. Supp. 2d 673, 676-77 (E.D. Pa. 2001) (PSLRA barred RICO claim by terminated employee alleging that corporate insiders failed to disclose certain conflicts of interest regarding administration of pension fund); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 370-71 (D.N.J. 1999) (PSLRA amendment barred federal RICO claim by terminated employees who alleged that defendants committed wire and mail fraud by making false statements in connection with a merger).

Because the conduct that Plaintiff alleges to support his civil RICO claim—again, a fraudulent conspiracy to defraud Veritec's shareholders that allegedly damaged those shareholders by reducing and/or diluting the value of their shares—is actionable as securities fraud, Plaintiff's RICO claim is barred by the PSLRA amendment and should be dismissed.

## IV. NO SPECIAL CIRCUMSTANCES EXIST TO JUSTIFY RETENTION OF JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS, AND THEREFORE THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION AND DISMISS THE PENDENT CLAIMS WITHOUT PREJUDICE.

Plaintiffs' Exchange Act and RICO claims provide the only basis for federal subject-matter jurisdiction over this case.[5] Upon dismissal of those federal claims, this Court should decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss those claims without prejudice.[6]

---

[5] Plaintiff references both the bankruptcy jurisdiction statute (28 U.S.C. § 1334) and the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), *see* Am. Compl. ¶¶ 2, 67, but neither statute conveys subject-matter jurisdiction in this case.

First, there is no subject-matter jurisdiction pursuant to § 1334 because the present suit does not "arise in" or "relate to" a pending bankruptcy proceeding. For a suit to be "related to" a bankruptcy case, it must "have some effect on the administration of the debtor's estate," which includes having an impact upon "the handling and administration of the bankruptcy estate." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quotations and internal quotation marks omitted). The outcome of this case cannot possibly affect the "estate being administered in bankruptcy" or impact upon "the handling and administration of the bankruptcy estate" because the California bankruptcy case closed on October 13, 1999, more than eight months before Plaintiff even commenced this suit on June 30, 2000. Thus, there was and is no bankruptcy case that this suit could conceivably affect. *See, e.g.*, *Specialty Mills*, 51 F.3d at 774 .

Second, the Declaratory Judgment Act does not provide an independent basis for subject-matter jurisdiction because it is a procedural statute, not a jurisdictional one. *See Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). If this Court dismisses Plaintiff's claims under the Exchange Act and the RICO statute, there is no longer a basis for subject-matter jurisdiction over Plaintiff's Declaratory Judgment Act claim, and the Court must dismiss it as well. *See, e.g.*, *J.W. DeWit Farms, Inc. v. Minnesota Cultivated Wild Rice Council*, 393 F. Supp. 2d 847, 852 (D. Minn. 2005) (Erickson, J.) (dismissing Declaratory Judgment Act claim for lack of subject-matter jurisdiction following dismissal of plaintiff's claim that, if viable, would have provided federal-question jurisdiction).

[6] Though Defendants are not asserting additional arguments regarding Plaintiffs' state-law claims at this time and are requesting dismissal of those claims without prejudice, Defendants do not waive, and expressly reserve, any and all defenses and arguments with respect to those claims.

The supplemental jurisdiction statute provides that district courts may decline to exercise supplemental jurisdiction over state claims where the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While district courts have discretion either to retain or decline jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). *See also Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000) ("when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity. *** [T]he judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.") (quotations omitted).

In this case, "[t]here are no special circumstances justifying departure from this general precept." *Edwards v. Widnall*, 17 F. Supp. 2d 1038, 1043 (D. Minn. 1998) (Davis, J.). To the contrary, the factors that the Supreme Court has said district courts should take into account in deciding whether to decline to exercise supplemental jurisdiction: "judicial economy, convenience, and fairness to litigants," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), all weigh in favor of declining to exercise jurisdiction in this case. As the Eighth Circuit has recognized, the judicial

economy factor (in particular, the sparse judicial resources of the federal courts as compared to the states) counsels in favor of declining to exercise jurisdiction over pendent state claims following early dismissal of federal claims. *See supra*. Furthermore, the remaining causes of action all concern application of state law to the unique facts of this case, which state courts are well-equipped to address. Finally, even though this suit has been pending for several years, there has been little activity and no discovery, and hence this is not a case in which substantial efforts by either the Court or the parties will have been wasted if Plaintiff must recommence the action in state court. *See Ciro, Inc. v. Gold*, 816 F. Supp. 253, 271-72 (D. Del. 1993) (declining, based upon factors set forth in *United Mine Workers*, to exercise jurisdiction over state claims following dismissal of federal securities claims). *Cf. Solfanelli v. Mainwaring,* Nos. CIV A 92-5113, CIV A 93-2129, 1993 WL 283879 (E.D. Pa. July 28, 1993) (declining to exercise jurisdiction over pendent state claims after dismissal of plaintiff's § 14(a)/Rule 14a-9 claims as moot, even though defendant "vehemently oppose[d]" dismissal of the state claims without prejudice on the grounds that the parties had expended resources completing discovery and preparing for trial).

Therefore, if the Court grants this Motion and dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to its discretion under § 1367(c)(3) and dismiss those claims without prejudice. *See Brogren v. Pohlad*, 933 F. Supp. 793, 804 (D. Minn. 1995) (Davis, J.) (dismissing state negligent misrepresentation claims pursuant to § 1367(c)(3) following dismissal of federal securities claims that were the basis for original jurisdiction). *Accord Sias v.*

*Herzog*, __ F. Supp. 2d __, 2006 WL 2418950, at **14-15 (D. Minn. Aug. 21, 2006) (Ericksen, J.) (declining to exercise jurisdiction over pendent state-law claims following dismissal of plaintiff's RICO claim pursuant to the PSLRA bar); *In re Teledyne Defense Contracting Derivative Litig.*, 849 F. Supp. 1369, 1383 (C.D. Cal. 1993) (dismissing state-law breach of fiduciary duty claims without prejudice following dismissal of plaintiffs' RICO and Exchange Act § 14(a) claims).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiffs' Exchange Act, Declaratory Judgment Act and RICO claims with prejudice (asserted, respectively, in the First, Fourth and Eighth Claims for Relief in the Amended and Restated Complaint). Defendants further request that the Court decline to exercise jurisdiction over Plaintiff's pendent state-law claims asserted in the remaining claims for relief, and therefore dismiss those claims without prejudice.

Respectfully submitted,

Dated: May 3, 2007

s/ David R. Crosby

David R. Crosby (# 237693)
LEONARD, STREET AND DEINARD
Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

*Attorney for Defendants Veritec, Inc., Van Thuy Tran, Jack E. Dahl, Larry Matthews, Helen L. Laib, Steven Holtze, Larry Johannes and The Matthews Group, L.L.C.*