**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Wolodymyr M. Starosolsky,

Plaintiff,

v.

Veritec, Inc., Van Thuy Tran, Jack E. Dahl, Larry Matthews, Helen L. Laib, Steven Holtze, Larry Johannes and The Matthews Group, L.L.C.,

Defendants.

Civil File No. 00-2760 MJD/AJB

**AFFIDAVIT OF CURTIS D. RIPLEY IN SUPPORT OF DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

---

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

CURTIS D. RIPLEY, being first duly sworn upon oath, deposes and states as follows:

1. I am one of the attorneys representing the Defendants in the above-captioned matter. I submit this affidavit in support of Defendants' Reply Memorandum of Law in Support of Summary Judgment.

2. Attached as Exhibit A is a true and correct copy of Plaintiff's Answers to Interrogatories and Request for Production of Documents, as well as the documents produced by Plaintiff in this litigation, provided by Plaintiff's counsel on May 17, 2007.

Further affiant sayeth not.

s/ Curtis D. Ripley
Curtis D. Ripley

Subscribed and sworn to before me,
this 30th day of July, 2007.

s/ Marci A. Buchmann
Notary Public

Hennepin County, Minnesota

Commission Expires January 31, 2010

# EXHIBIT A

**Joseph W. Dicker, P.A.**
***attorney at law***
403A St. Anthony Main
219 SE Main Street
Minneapolis, MN 55414
Phone: (612) 617-7745
Fax: (612) 617-4882
Email: joe@joedickerlaw.com

May 17, 2007

David R. Crosby, Esq.
Curtin Ripley, Esq.
Leonard, Street and Deinard, P.A.
150 South Fifth Street
Suite 2300
Minneapolis, MN 55402

**RE: Starosolsky v. The Matthews Group, et al.**

Dear Messrs. Crosby and Ripley:

I enclose and hereby served upon you by fax and mail Plaintiff's Answers to Interrogatories and Request for Production of Documents. The documents will be provided with the hard copy of this letter.

Thank you for your kind attention.

Very truly yours,

**Joseph W. Dicker, P.A.**

Joseph W. Dicker

JWD/jlt

Enclosures

RECEIVED MAY 22 2007

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Wolodymyr M. Starosolsky,

Plaintiff,

vs. Civil File No. 00-2760MJD/JGL

Veritec, Inc., a Nevada corporation; Van Thuy Tran, an individual; Jack E. Dahl, an individual; Larry Matthews, an individual; Helen L. Laib, an individual; Steven Holtze, an individual; Larry Johannes, an individual, and The Matthews Group, LLC, a Minnesota limited liability Company,

Defendants.

PLAINTIFF'S RESPONSE TO DEFENDANT VERITEC, INC.'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

TO: Defendant, Veritec, Inc., and its attorneys, David R. Crosby, Esq., Leonard, Street and Deinard, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402.

Plaintiff, Wolodymyr M. Starosolsky (hereinafter, "Plaintiff"), submits the following Answers and objections to Defendant's Interrogatories and Request for Production of Documents (hereinafter, "Defendant's Requests").

## GENERAL OBJECTIONS

1. Plaintiff objects to Defendant's Requests to the extent it calls for the disclosure of information or communications protected by the attorney-client privilege or any other applicable privilege, rule of law or statute, on the grounds that such matters are exempt from discovery.
2. Plaintiff objects to Defendant's Requests to the extent it calls for the disclosure of information protected by the work product doctrine, including the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of Plaintiff concerning the above-captioned litigation, on the grounds that such information is exempt from discovery; and further objects to Defendant's Requests to the extent it calls for the disclosure of any information or materials that constitute or include materials protected under the work product doctrine and/or materials prepared in anticipation of litigation.

3. Plaintiff objects to Defendant's Requests to the extent it is overbroad, vague and ambiguous, and also to the extent it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that Defendant's Requests exceed the scope of discovery permissible under the Minnesota Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Plaintiff not commensurate with Defendant's legitimate discovery needs.
4. Plaintiff objects to Defendant's Requests to the extent it purports to seek information or materials from Plaintiff that are not within its possession, custody and/or control, on the grounds that such discovery exceeds the scope of discovery permissible under the Minnesota Rules of Civil Procedure.
5. Plaintiff objects to Defendant's Requests to the extent it is premature, since discovery is continuing. Furthermore, Plaintiff reserves the right to supplement its responses to Defendant's Requests and to introduce at trial such additional facts and documents which are uncovered, developed or relied upon by Plaintiff and its counsel in their continuing discovery and investigation of the issues in this action.
6. All information covered by any of the foregoing objections will be excluded from the following discovery responses.

## INTERROGATORIES

**<u>Interrogatory No. 1</u>:**

Please identify all admissions (as defined in Rule 801 of the Federal Rules of Evidence) that you claim have been made by any party regarding any of the allegations of the Complaint.

**Answer:** None.

**<u>Interrogatory No. 2</u>:**

For each theory of recovery you assert against defendants, describe in detail the nature and amount of each element of damages that you claim in this action, and, as to each component of such damages, state in detail the manner in which the same was determined, identify and provide the bates numbers for all documents to determine such damages, state whether the component of damage is cumulative with any other

component of damages, and identify the person primarily responsible for the determination thereof.

**Answer:** The unpaid portion of the Matthews Group Note,
Ought not to hold the stock they hold because they did not perform under the Matthews Group Note
Dilution of stock from unauthorized additional shares should be reversed
Value of the assets transferred to other company
$400,000 plus interest paid on the Herner Group Note (and the additional shares they took in consideration of that note)
Bridge Group was supposed to receive Series H stock, that should be reversed because they did not perform (never paid the note and the note was not properly secured by real estate)
Overpaid salaries
The transfer of assets to the 2 subsidiaries. And the repurchase of the one subsidiary.
Plaintiff has determined the bases for recovery.

__**Interrogatory No. 3**__:

Please identify each document you may introduce as an exhibit in this matter.

**Answer:** All 10Q and 10K reports filed by Veritec
Corporate financial statements
California Bankruptcy Reorganization Plan of Reorganization
Bankruptcy Court Order approving the Plan
All corporate minutes and records of action produced by the Defendants
Matthews Group Note
Proxy statement
Van Tran's bankruptcy Notice
Articles of Incorporation
By-laws
W M S' notes of director's meetings.
Audio tape transcript of board meetings
Summary of real estate property to be pledged by the Matthews Group to secure the Matthews Group debt
Real estate records showing title liens against the to-be-pledged properties
Table of Malfeasance and Misfeasance by Officers, Directors and others for Veritec, Inc.
Any document identified or otherwise introduced into evidence by Defendants
Any document not specifically identified but produced by either party in the course of discovery
Any documents that may be properly introduced without prior identification for the purpose of establishing foundation or authenticity

Any documents not otherwise identified that may be used in rebuttal of any fact or assertion made by Defendants

**Interrogatory No. 4:**

Please identify each person you expect to or may call at trial as a witness and, for each, state the facts, observations and/or documents to which the witness is expected to testify.

**Answer:** Wolodymyr Starosolsky will testify about the background of the California reorganization proceedings, his transactions with the companies, his experience as a board member, and all of the claims advanced in the Complaint.

Van Tran will be called to testify with respect to her transactions with the Debtor, her negotiations on behalf of the Matthews Group, all transactions she has had personally with the Debtor, and the Veritec's operations under her management.

Howard Behling,Roger Baily, Larry Smith and Allen Moberg will all be called to testify about the California reorganization proceedings, the negotiations with the Matthews Group, the expectations concerning operations and the operations of the Defendant Veritec, Inc.

**Interrogatory No. 5:**

If you have retained or consulted any person or expect to call any person as an expert witness at the trial of this action, identify each such person and state in detail:

a) The subject matter to which the expert is expected to testify;

b) The expert's qualifications in such subject area on which he or she is expected to testify, including, but not limited to, education and training, background and any employment or any other experience that relates to the subject matter of the expected testimony;

c) The substance of the facts and opinions to which the expert is expected to testify; and a summary of the grounds for each opinion, including, but not limited to an identification and description of each document that the expert used or relied upon in forming each opinion.

**Answer:** None.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**Request No. 1:**

All documents the identification of which is called for by Defendant Veritec, Inc.'s First Set of Interrogatories to Plaintiff.

**Response:** See Answer to Interrogatory No. 3 above.

**Request No. 2:**

All documents that you plan to use as exhibits in this case.

**Response:** See Answer to Interrogatory No. 3 above.

**Request No. 3:**

All documents received by or from any person designated by you to provide expert testimony in this case.

**Response:** None.

**AS TO OBJECTIONS:**

**Joseph W. Dicker, P.A.**

Dated: May 7, 2007

Joseph W. Dicker (158264)
403A St. Anthony Main
219 SE Main Street
Minneapolis, MN 55414
Telephone: (612) 617-7745

**AS TO ANSWERS:**

Wolodymyr Starosolsky

Subscribed and sworn to before me
this 17th day of May, 2007

Notary Public

MICHAEL DANIEL JURCZYNSKI
Notary Public, State of New York
No. 01JU6126095
Qualified in Queens County
Commission Expires April 25, 2009

# Table of Malfeasance and Misfeasance by Officers, Directors and others for Veritec, Inc.

| Date | Alleged Activity | Agents | Directors For | Directors Against | Cause of Action |
|---|---|---|---|---|---|
| **1999**<br><br>**Jan 1 to April 30** | 1. Fraudulent representations to Board of Directors -- Conspiracy to control Board | TMG | | | Fraud |
| | 2. Acceptance of fraudulent representations –failure to perform due diligence | Matthews<br>Van Tran<br>Junghans | Matthews<br>Van Tran<br>Junghans<br>Behling<br>Salisbury | Starosolsky<br>Baily | Conspiracy to Fraud<br>Intentional Breach |
| | 3. Concealment from the Board – control persons for TMG | TMG | | | Fraud |
| **1999**<br><br>**May 1 to Dec 20** | 1. Fraudulent representations to Board re: promissory note/security thereof and TMG's credit lines | TMG<br>Van Tran | | | Fraud |
| | 2. Failure of Board to verify promissory note security | | Matthews<br>Van Tran<br>Behling<br>Salisbury | Starosolsky<br>Baily | Negligent Breach |
| | 3. Action on behalf of Veritec without Board approval | Matthews<br>Van Tran | | | Intentional Breach |
| | 4. Fraudulent representations to SEC on forms 10 QSB and 10 KSB | Matthews<br>Van Tran<br>Callahan | | | Securities Fraud |
| | 5. Fraudulent representations to SEC on Proxy | Matthews<br>Van Tran | | | Securities Fraud |
| | 6. Fraudulent representations to Bankruptcy Court | Matthews<br>Van Tran | | | Bankruptcy Fraud |
| | 7. Unlawful distribution of unauthorized company securities pursuant to NRS 78.300 | Matthews<br>Van Tran | Matthews<br>Van Tran<br>Laib<br>Holtze | Starosolsky<br>Baily | Securities Fraud<br>Intentional Breach |
| | 8. Failure to escrow Series H Preferred or Converted Common shares pursuant to NRS 78.211(4) | Matthews<br>Van Tran | Matthews<br>Van Tran<br>Laib<br>Holtze | Starosolsky<br>Baily | Negligent Breach |

5/15/2007 1:02 PM FROM: Fax TO: 12122320293 PAGE: 001 OF 002

**Table of Malfeasance and Misfeasance by Officers, Directors and others for Veritec, Inc.**

| Date | Alleged Activity | Agents | Directors For | Directors Against | Cause of Action |
|---|---|---|---|---|---|
| After Dec 20, 1999 to Present | 1. Failure of Board to perfect security interest in promissory note | Matthews<br>Van Tran<br>Westberg | Matthews<br>Van Tran<br>Westberg | | Intentional Breach |
| | 2. Unlawful distribution of unauthorized company securities pursuant to NRS 78.300 | Matthews<br>Van Tran<br>Westberg | Matthews<br>Van Tran<br>Westberg | | Intentional Breach |
| | 3. Failure of Board to protect Company's Intellectual Property | Matthews<br>Van Tran<br>Westberg | Matthews<br>Van Tran<br>Westberg | | Intentional Breach |
| | 4. Failure of Board to protect Company's Intellectual Property | Matthews<br>Van Tran<br>Westberg | Matthews<br>Van Tran<br>Westberg | | Conversion |
| | 5. Concealment of Related Parties Transaction | Matthews<br>Van Tran<br>Westberg | Matthews<br>Van Tran<br>Westberg | | Conversion |

7/13/2007 1:02 PM FROM: Fax TO: 12122320293 PAGE: 002 OF 002

# PROMISISORY NOTE

**$2,000,000**

Golden Valley, Minnesota
May 28, 1999

Payee: Veritec Inc. a Nevada Corporation
16461 Sherman Way, Suite # 125
Van Nuys, California

Payer: The Matthews Group LLC
1430 Orkla Dr.
Golden Valley, Mn. 55427

FOR VALUE RECEIVED, The undersigned, The Matthews Group LLC, a Minnesota Limited Liability Company, hereby promises to pay to Veritec Inc., a Navada Corporation, the principal sum of TWO MILLION ($2,000,000) DOLLARS. An amortization schedule is attached hereto as exhibit A.
EXHIBIT A – ATTACHED AND MADE AS PART OF THIS PROMISORY NOTE

This Note is given in payment for Two Hundred Seventy Five Thousand (275,000) shares of Series H Preferred Stock of Veritec, Inc. Payments under this Note shall be in one Hundred eight (108) equal monthly installments of Eighteen Thousand Five Hundred Eighteen Dollars and Fifty Two cents ($18,518.52), each due and payable on the first day of the first full month following issuance of the Matthews Group of the above referenced Series H Preferred Stock.

This Note is secured by pledge of assets of income producing properties with the appraised value of over Two Millions ($2,000,000.00) Dollars.

The Matthews Group LLC, has the right to pay any or all amounts in advance of due dates.

This note has been executed and delivered in, and its terms and provisions are to be governed and controlled by, the laws of the State of Minnesota.

In WITNESS WHEREOF, the undersigned has executed the PROMISORY NOTE upon the day and year first above appearing.

The Matthews Group, LLC

By [signature] 5/28/99
Van Thuy Tran, Manager

EXHIBIT A
PAGE 7

5/28/99

## PROPERTIES PLEDGED BY LAWRENCE J. JOHANNS TO THE MATTHEWS GROUP LLC

| | Value | Mortgage | Equity | Monthly Income |
|---|---|---|---|---|
| 1. Apartment complex- 20 units<br>810 N. Mooney St. Visalia, Ca | 875,000.00 | 450,000.00 | 425,000.00 | 8,400.00 |
| 2. Court Hills Condos - 12 units<br>457 Scott City, Iowa | 810,000.00 | none | 810,000.00 | 7,200.00 |
| 3. Mojave Villas -12 units Condos<br>25882 Jasper Rd. Barstow, Ca | 380,000.00 | none | 380,000.00 | 3,400.00 |
| 4. 1/2 owner: 1390 Silver Lake Rd.<br>New Brighton, Mn. | 60,000.00 | none | 30,000.00 | 300.00 |
| 5. 200 S. Rainbow Blvd.<br>Las vegas, Nevada | 35,000.00 | none | 35,000.00 | 600.00 |
| 6. 3426 Hemlock Place N. E.<br>Cedar Rapids, Iowa | 186,543.00 | none | 186,543.00 | 1,880.00 |
| 7. 2096-2055 5th Ave.<br>Marion, Iowa | 172,000.00 | none | 172,000.00 | 1,448.00 |
| 8. 5408 Vera Cruz<br>Crystal, Minnesota | 85,000.00 | none | 85,000.00 | 700.00 |
| TOTAL | $ 2,603,543.00 | $ 450,000.00 | $ 2,123,543.00 | $ 23,726.00 |

EXHIBIT A
PAGE 8

# Cuesta Title Company

2025 W. Feemster Avenue - Visalia, CA 93277
Phone (559) 732-2000 FAX (559) 732-0414

Prepared For : Craig

Prepared By: Denise Anderson

| | | | |
|---|---|---|---|
| Parcel | : 093 021 024 000 | | |
| Owner | : Johanns Lawrence (Tr) | Total | : $165,675 |
| CoOwner | : | Land | : $51,773 |
| Site | : 910 N Mooney Blvd Visalia 93291 | Struct | : $113,902 |
| Mail | : 5604 W Laura Ct Visalia Ca 93277 | Other | : |
| Xfered | : 03/21/1994 Doc # : 20928 | %Imprvd | : 69 |
| Price | : PrDoc# : | Exempt | : |
| Pr Xfer | : Deed : | Type | : |
| PrPrice | : | TaxArea | : 006137 |
| First TD | : | 00-01 Tax: | $1,771.04 |
| LandUse | : 1400 Res,Fourplex | | |
| Legal | : 910 N MOONEY BLVD VISALIA | MapGrid | : 171 E4 |

Census : Tract: 11.00 Block : 4
Seller : JOHANNS LAWRENCE J
School District: Visalia Unified

**Phone**
Owner :
Tenant : 559-735-9013

## PROPERTY CHARACTERISTICS

| | | | | | |
|---|---|---|---|---|---|
| Bedrooms | : | Building SqFt: | | Lot Acres | : |
| Bathrooms | : | Garage Type | : | Lot SqFt | : |
| Fireplace | : | Garage SqFt | : | Bldg Matl | : |
| Air Cond | : | Stories | : | Year Built | : |
| Heat Mthd | : | Pool | : | | |

## SALES AND LOAN INFORMATION

**Current**

Sale Price :
Loan Amount :
Lender :
Document # : 20928
Loan Type :

**Prior**

Sale Price :
Prior Date : 09/30/1991
Doc # :

*The Information Provided Is Deemed Reliable, But Is Not Guaranteed*

5/15/2007 12:54 PM FROM: Fax TO: 12122320293 PAGE: 002 OF 011

MAY- 4-01 FRI 7:49 P.04

# Cuesta Title Company

2025 W. Feemster Avenue - Visalia, CA 93277
Phone (559) 732-2000 FAX (559) 732-0414

Prepared For: Craig

Prepared By: Denise Anderson

Parcel : 093 021 025 000
Owner : Johanns Lawrence (Tr)
CoOwner :
Site : 910 N Mooney Blvd Visalia 93291
Mail : 5604 W Laura Ct Visalia Ca 93277
Xfered : 03/21/1994 Doc # : 20928
Price : PrDoc# :
Pr Xfer : Deed :
PrPrice :
First TD :
LandUse : 1500 Res,Multiple Units,4+
Legal : 910 N MOONEY BLVD VISALIA

Total : $497,024
Land : $103,546
Struct : $393,478
Other :
%Imprvd : 79
Exempt :
Type :
TaxArea : 006137
00-01 Tax: $5,313.16

MapGrid : 171 E4

Census : Tract: 11.00 Block : 4
Seller : JOHANNS LAWRENCE J
School District: Visalia Unified

**Phone**
Owner :
Tenant : 559-735-9013

## PROPERTY CHARACTERISTICS

Bedrooms :
Bathrooms :
Fireplace :
Air Cond :
Heat Mthd :

Building SqFt:
Garage Type :
Garage SqFt :
Stories :
Pool :

Lot Acres :
Lot SqFt :
Bldg Matl :
Year Built :

## SALES AND LOAN INFORMATION

**Current**

Sale Price :
Loan Amount :
Lender
Document # : 20928
Loan Type :

**Prior**

Sale Price :
Prior Date : 00/00/1901
Doc # :

*The Information Provided Is Deemed Reliable, But Is Not Guaranteed.*

CUESTA TITLE CO. ID:5597323360 MAY 02'01 12:24 No.015 P.08

# CT Cuesta Title Company

2025 W. Feemster Avenue - Visalia, CA 93277
Phone (559) 732-2000 FAX (559) 732-0414

**Prepared For :** Craig

**Prepared By:** Denise Anderson

Parcel : 093 021 023 000
Owner : Johanns Lawrence (Tr)
CoOwner :
Site : 910 N Mooney Blvd Visalia 93291
Mail : 6604 W Laura Ct Visalia Ca 93277
Xfered : 03/21/1994 Doc # : 20928
Price : PrDoc# :
Pr Xfer : Deed :
PrPrice :
First TD :
LandUse : 1400 Res,Fourplex
Legal : 910 N MOONEY BLVD VISALIA

Total : $165,675
Land : $51,773
Struct : $113,902
Other :
%Imprvd : 69
Exempt :
Type :
TaxArea : 006137
00-01 Tax: $1,771.04

MapGrid : 171 E4

Census : Tract : 11.00 Block : 4
Seller : JOHANNS LAWRENCE J
School District: Visalia Unified

*Phone*
Owner :
Tenant : 559-735-9013

## PROPERTY CHARACTERISTICS

Bedrooms :
Bathrooms :
Fireplace :
Air Cond :
Heat Mthd :

Building SqFt:
Garage Type :
Garage SqFt :
Stories :
Pool :

Lot Acres :
Lot SqFt :
Bldg Matl :
Year Built :

## SALES AND LOAN INFORMATION

**Current**

Sale Price :
Loan Amount :
Lender :
Document # : 20928
Loan Type :

**Prior**

Sale Price :
Prior Date : 09/30/1991
Doc # :

*The Information Provided Is Deemed Reliable, But Is Not Guaranteed.*


93-02
TAX CODE AREA
6-137
DIVISADERO ST
SADY LANE
LESLIE ROAD
MOONEY BLVD
CITY OF VISALIA
ASSESSOR'S MAPS BK. 93, PG. 02
COUNTY OF TULARE, CALIF.
"Notice: This is neither a plat nor a survey. It is furnished merely as a convenience to aid you in locating the land indicated hereon with reference to streets and other land. No liability is assumed by reason of any reliance hereon."

RECORDING REQUESTED BY

Bradley & Riley

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:

Name Lawrence Johannis
Street Address 518 North 12th Street
City & State Osage, IA 50461

Title Order No. ______ Escrow No. ______

94-020928

Recorded
Official Records
County of
Tulare
Rudy Svoboda
Recorder
8:01am 21-Mar-94

| | |
|---|---|
| Rec Fee | 3.00 |
| SRF | 10.00 |
| Check | 13.00 |

RR 1

This space for Recorder's use

# Grant Deed

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ 0
☐ unincorporated area ☒ City of VISALIA
Parcel No. 093-013-12-20
☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Lawrence J. Johanns, an unmarried man

hereby GRANT(S) to

Laurence Johanns, Trustee of the Johanns Land Trust u/d/t January 19, 1994

the following described real property in the City of Visalia
county of Tulare, State of California:

PARCEL 1:

THAT portion of Lot 12 of Visalia Gardens Farms, in the City of Visalia, County of Tulare, State of California, as per Map recorded in Book 16, page 58 of Maps, more particularly described as Parcels No. 1, 2, and 3 of Parcel Map No. 1703 as per Map recorded in Book 18, Page 4 of Parcel Maps, Tulare County Records.

PARCEL 2:

An easement over the South 20 feet of the North 118 feet of the East 150 feet of Lot 12 of Visalia Gardens Farms, in the City of Visalia, County of Tulare, State of California, as per Map recorded in Book 16, page 58 of Maps, Tulare County Records for pipe lines and an easement for ingress and egress for the purpose of maintaining same.

Dated March 18, 1994

Lawrence J. Johanns

STATE OF CALIFORNIA IOWA
COUNTY OF Mitchell } S.S.

On March 18, 1994 before me,
Connie Janssen
a Notary Public in and for said County and State, personally appeared Lawrence J. Johanns, an unmarried man

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Connie Janssen

FOR NOTARY SEAL OR STAMP

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE

| Name | Street Address | City & State |
|---|---|---|
| | | |

AUTO-00044500 Description: 1994.20928 Page 1 of 1 Comment:

WHEN RECORDED MAIL TO

AMERICAN SAVINGS BANK
INCOME PROPERTY LENDING AUDIT DEPT
17876 VON KARMAN, 2ND FLOOR
IRVINE, CA 92714-8689

67213

RECORDED AT REQUEST OF CHICAGO TITLE CO.

SEP 30 1991

OFFICIAL RECORDS TULARE COUNTY, CALIFORNIA

Recording & Index by Fast only.

LOAN NO. 6U887127
ORDER NO. 401432-JS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

(12)

# MULTIFAMILY DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT
~~(Security for Construction Loan Agreement)~~

THIS DEED OF TRUST (herein "Instrument") is made this 18TH day of SEPTEMBER, 1991, among the Trustor/Grantor, LAWRENCE J. JOHANNS, AN UNMARRIED MAN,

whose address is 1720 FIRST STREET, SIMI VALLEY, CA 93065 (herein "Borrower"), N.A. MORTGAGE SERVICES, INC., A CALIFORNIA CORP. (herein "Trustee"), and the Beneficiary, AMERICAN SAVINGS BANK a CORPORATION organized and existing under the laws of THE UNITED STATES whose address is 400 EAST MAIN STREET, STOCKTON, CA. 95290 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, [ the leasehold estate pursuant to a lease (herein "ground lease") dated N/A between N/A and N/A recorded in N/A ] in and to the following described property located in TULARE COUNTY, State of California:

083-082-04-00

PARCEL 1:

THAT PORTION OF LOT 12 OF VISALIA GARDENS FARMS, IN THE CITY OF VISALIA, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10, PAGE 56 OF MAPS, MORE PARTICULARLY DESCRIBED AS PARCELS NO. 1, 2, AND 3 OF PARCEL MAP NO. 1703 AS PER MAP RECORDED IN BOOK 18, PAGE 4 OF PARCEL MAPS, TULARE COUNTY RECORDS

PARCEL 2:

AN EASEMENT OVER THE SOUTH 20 FEET OF THE NORTH 118 FEET OF THE EAST 180 FEET OF LOT 12 OF VISALIA GARDENS FARMS, IN THE CITY OF [illegible] FOR INGRESS AND EGRESS FOR THE PURPOSE OF MAINTAINING SAME.

which has the address of: 910 NORTH MOONEY BOULEVARD
VISALIA, CA 93291
("PROPERTY ADDRESS").

LOAN NO. 53587127
ORDER NO. 401432-JS

TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, trees and plants, and all interest of Borrower in (1) other tangible personal property of any nature whatsoever (a) located in or upon the real property and (2) intangible personal property relating to the development, use or operation of the real property including, but not limited to, all inventories, accounts, accounts receivable, contract rights, chattel paper, leases (subject, however, to the assignment of rents to Lender herein), instruments, deposits, monies due and to become due (including guaranties and security for the payment of same) and all proceeds, benefits and claims arising as a result of loss in value of the property or damage to any improvements therein or thereupon including, but not limited to, insurance proceeds, awards for condemnation and causes of action against third persons or entities;

all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property".

TO SECURE TO LENDER (a) the repayment of the indebtedness evidenced by Borrower's note dated 09/18/91 (herein "Note") in the principal sum of FIVE HUNDRED THOUSAND AND 00/100 Dollars, with interest thereon, with the balance of the indebtedness, if not sooner paid, due and payable on OCTOBER 1ST, 2006, and all renewals, extensions and modifications thereof; ~~(b) the repayment of any future advances, with interest thereon, made by Lender to Borrower pursuant to paragraph 33 hereof (herein "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in the Construction Loan Agreement between Lender and Borrower dated , 19 , if any, as provided in paragraph 25 hereof;~~ (d) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; and (e) the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

INITIAL [illegible]

FC3 (2/91)

page 2 of 8 pages

Non-Uniform Covenants. Borrower and Lender further covenant and agree as follows: LOAN NO. 00087137 ORDER NO. 401432-J6

17. ACCELERATION; REMEDIES. [illegible] ... including, but not limited to, attorneys' fees and costs of documentary evidence, abstracts and title reports.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold ... [illegible] ... any purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, express or implied. [illegible] ... to the person or persons legally entitled thereto.

18. RECONVEYANCE. Upon payment of all sums secured by this Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Instrument [illegible] ... Such person or persons shall pay Trustee's reasonable costs incurred in reconveying the Property.

19. SUBSTITUTE TRUSTEE. Lender, at Lender's option, may from time to time, by an instrument in writing, appoint a successor trustee to any Trustee appointed hereunder [illegible] ... The procedure herein provided for substitution of trustees shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

20. REQUEST FOR NOTICES. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated below.

21. STATEMENT OF OBLIGATION. Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

22. SPOUSE'S SEPARATE PROPERTY. Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

INITIAL

~~[illegible]~~

IN WITNESS WHEREOF, Borrower has executed this Instrument or has caused the same to be executed by its representatives thereunto duly authorized.

LAWRENCE A. JOHNS[illegible] Borrower

Borrower

Borrower

Borrower

Borrower's Address
1720 FIRST STREET
SIMI VALLEY, CA 93065

THIS DEED OF TRUST HAS BEEN MODIFIED AND SUPPLEMENTED IN CERTAIN RESPECTS AS SET FORTH IN THE RIDER TO MULTIFAMILY INSTRUMENT ANNEXED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PRINTED PORTIONS OF THIS DEED OF TRUST AND THE PROVISIONS OF SAID RIDER TO MULTIFAMILY INSTRUMENT, THE RIDER SHALL GOVERN.

LOAN NO. 69807187

# RIDER TO DEED OF TRUST

THIS RIDER is made this 18TH day of SEPTEMBER, 1991, and is incorporated into and shall be deemed to amend and supplement that certain Deed of Trust of even date herewith, securing a promissory note in the principal amount of FIVE HUNDRED THOUSAND AND 00/100 DOLLARS($500,000.00) given by Borrower to American Savings Bank ("Lender").

In addition to the covenants and agreement made in the Deed of Trust, Borrower further covenants and agrees as follows:

(a) Borrower will not use, generate, manufacture, produce, store, release, discharge, or dispose of on, under or about the Property or transport to or from the Property any Hazardous Substance (as defined herein) or allow any other person or entity to do so.

(b) Borrower shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any Environmental Law (as defined herein).

(c) Borrower shall give prompt written notice to Lender of:

(i) any proceeding or inquiry by any governmental authority (including, without limitation, the California State Department of Health Services) with respect to the presence of any Hazardous Substance on the Property or the migration thereof from or to other property;

(ii) all claims made or threatened by any third party against Borrower or the Property relating to any loss or injury resulting from any Hazardous Substance; and

(iii) Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Environmental Law including without limitation Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code Sections 25220 et seq., or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Environmental Law.

(d) Lender shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Environmental Law and have its attorney's fees in connection therewith paid by Borrower.

(e) Borrower shall protect, indemnify and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any and all loss, damage, cost, expense or liability (including attorney's fees and costs) directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under or about the Property including without limitation (i) all foreseeable consequential damages; and (ii) the costs of any [illegible] Property and the preparation and implementation of any closure, remedial or other required plans. This indemnity shall survive the reconveyance of the lien of this Deed of Trust, or the extinguishment of the lien by foreclosure or action in lieu thereof, and this covenant shall survive such reconveyance or extinguishment.

(f) In the event that any investigation, site monitoring, containment, cleanup, removal, or other remedial work of any kind or nature (the "Remedial Work") is reasonably necessary or desirable under any applicable local, state, or federal law or regulation, any judicial order, or by any governmental or nongovernmental entity or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous Substance in or into the air, soil, groundwater, surface water or soil vapor at, on, about, under or within the Property (or any portion thereof), Borrower shall within thirty (30) days after written demand for performance thereof by Lender (or such shorter period of time as may be required under any applicable law, regulation, order or agreement), commence to perform, or cause to be commenced, and thereafter diligently prosecute to completion, all such Remedial Work. All Remedial Work shall be performed by one or more contractors, approved in advance in writing by Lender, and under the supervision of a consulting engineer approved in advance in writing by Lender. All costs and expenses of such Remedial Work shall be paid by Borrower including, without limitation, the charges of such contractor(s) and/or the consulting engineer, and Lender's reasonable attorney's fees and costs incurred in connection with monitoring or review of such Remedial Work. In the event Borrower shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Lender may, but shall not be required to, cause such Remedial Work to be performed and all costs and expenses thereof, or incurred in connection therewith, shall become part of the indebtedness secured hereby.

(g) Lender is authorized by itself, its agents, employees, or workers to enter at any reasonable time upon part of the Property for the purposes of inspecting the same for Hazardous Substances and Borrower's compliance with this Section and such inspections may include, without limitation, soil borings. Borrower agrees to pay to Lender, upon Lender's demand, all expenses, costs [illegible] industrial hygiene", or the environmental conditions on, under or about the Property, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1976 ("RCRA"), 42 U.S.C. Section 6901 et seq.

(i) The term "Hazardous Substance" shall include without limitation:

(1) Those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act, 49 U.S.C. Sections 1801 et seq., and in the regulations promulgated pursuant to said laws;

(2) Those substances defined as "hazardous wastes" in Section 25117 of the California Health & Safety Code, or as "hazardous substances" in Section 25316 of the California Health & Safety Code, and in the regulations promulgated pursuant to said laws;

#21

Loan No. 89587187

# Adjustable Rate Balloon Rider
(MLS Index-Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18TH day of SEPTEMBER, 19 91, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICAN SAVINGS BANK (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

810 NORTH MOONEY BOULEVARD, VISALIA, CA 93191
Property Address

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE MONTHLY PAYMENT INCREASE WILL HAVE LIMITS WHICH COULD RESULT IN INCREASES IN THE PRINCIPAL BALANCE UP TO 110% OF THE ORIGINAL AMOUNT AND IN A BALLOON PAYMENT BEING DUE AT MATURITY. THE BORROWER'S INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial rate of 8.300 %. The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of JANUARY, 19 92, and on that day every month thereafter. Each date on which my interest rate could change is called a "Change Date".

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the monthly weighted average cost of savings, borrowings and advances to the Federal Home Loan Bank of San Francisco ("Bank") to Eleventh District members of the Bank based on statistics tabulated and published by the Bank during the term of this Note.

The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me a notice of this choice.

(C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.450 percentage points (2.450 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

(D) Interest Rate Limit

My interest rate will never be greater than 14.000 %, except that following any sale or transfer of the property after the first interest rate change date, the maximum interest rate will not be more than 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

(E) Payment Change Dates

Effective every year commencing NOVEMBER 1ST, 1992, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full [illegible] months after NOVEMBER 1ST, 19 91, at my new interest rate in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below.

ADJUST/Adjustable
(Rev. 1/89)

Loan No. 88687197

(F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment following a Payment Change Date will be limited to 7.5% more or less than the amount I have been paying.

(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

(H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (110%) of the principal amount originally borrowed. My unpaid principal could exceed that maximum amount due to the 7.5% annual payment increase limitation. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will begin paying a new monthly payment until the next Payment Change Date. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments.

(I) Required Full Monthly Payment

On the fifth anniversary of the due date of the first monthly payment, and at the beginning of each fifth loan year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice."

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a fee of __1__ % of the unpaid principal balance due under this note as a condition of Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand of Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

[signature] [signature]
Lorraine J. Jones

Borrower _______________ Borrower

_______________ Borrower _______________ Borrower

ARM/Rider/ASM
(Rev 10/19)